IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AT&T MOBILITY LLC f/k/a<br>CINGULAR WIRELESS LLC,<br><br>  Plaintiff,<br><br>     v.<br><br>C&C GLOBAL ENTERPRISES, LLC;<br>INTERNET MEDIA SOURCE, LLC;<br>INCOME INSTITUTE, LLC;<br>CHARLES ROSSOP; NEELA<br>PUNDIT ROSSOP; JOHN DOES 1-<br>100; XYZ CORPS. 1-100,<br><br>  Defendants. | CIVIL ACTION FILE<br>NO. 1:06-CV-2733-TWT |

OPINION AND ORDER

This is a telecommunications spam attack case. It is before the Court on the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 13]. For the reasons set forth below, the Defendants' motion is GRANTED.

I. BACKGROUND

The Plaintiff, AT&T Mobility LLC,[1] operates an interstate wireless communications network providing mobile telephone services to approximately 58

---

[1] This lawsuit was originally filed by Cingular Wireless LLC. On January 8, 2007, Cingular changed its name to AT&T Mobility LLC.

million customers across the United States. It offers to its customers the ability to send and receive electronic mail in the form of text messages. A sender transmits the message electronically through a text message router, which then transmits the message to the Plaintiff's interstate wireless network. This text messaging can be done either on a cellular telephone or through the Plaintiff's website, www.cingularme.com. Recently, millions of spam text messages were sent from this website through a network of hijacked personal computers. The Plaintiff's customers received text messages from unidentified individuals expressing interest in the purchase or rental of timeshares. A sample message stated as follows: "We have someone interested in buying or renting your Time Share logon to- www.webuyresorts.com." (First Am. Compl., ¶ 23.) Several websites were advertised, including www.webuyresorts.com and www.resortsellers.com.

In an effort to determine the source of these text messages, AT&T Engineer Alex Bobotek visited www.resortsellers.com and left his contact information. He was later contacted, and provided with a callback number, by someone identifying herself as "Val" from "CNC Timeshares in Daytona Beach, Florida." The Plaintiff subsequently identified the Defendant C&C Global Enterprises, LLC as the billing name for this number and the Defendant Charles Rossop as another name listed on the account. The Plaintiff also discovered that C&C Global owned and operated a

website, www.cnctimeshares.com, which had been registered by Defendant Internet Media Source, LLC.  Internet Media has also registered several other domain names purporting to sell services related to internet marketing, lead generation, and buying and selling of timeshares.  Included among these are the following sites: incomeinstitute.com, wholesaleleadsource.com, gotreply.com, income101.com, justsellmytimeshare.com, icashbiz.com, and internetleadpros.com. (First Am. Compl., ¶ 32.) The Plaintiff alleges that Defendant Income Institute "paid for and renewed the CNC website and other websites related to lead generation and timeshares." (Id., ¶ 34.) The Plaintiff further claims that these three companies are interrelated and are all owned and operated by Charles Rossop and Neela Pundit Rossop, and that these Defendants or their agents were responsible for the timeshare spam attack.

AT&T has filed this action alleging violations of the Computer Fraud and Abuse Act ("CFAA"), the Telephone Consumer Protection Act ("TCPA"), and the Georgia Computer Systems Protection Act, as well as state law claims for trespass, conversion, and unjust enrichment. It is undisputed that none of the Defendants reside in the state of Georgia.  The Defendants have moved for dismissal based on lack of personal jurisdiction.

## II. DISCUSSION

The Defendants contend that this Court cannot properly exercise personal jurisdiction over them. The plaintiff has the initial burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant. Meier v. Sun Intern. Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Id. at 1269 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)). If the defendant challenges the facts alleged in the complaint and submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction. Meier, 288 F.3d at 1269; Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1215 (11th Cir. 1999). If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Meier, 288 F.3d at 1269; Madara, 916 F.2d at 1514.

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004); Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 855 (11th Cir. 1990). First, the court must ascertain whether the exercise of jurisdiction is proper under the forum state's long-arm statute. Mutual Serv., 358 F.3d at 1319; Cable/Home, 902 F.2d at 855. Second, the court must determine whether

sufficient "minimum contacts" with the forum exist to satisfy the Due Process Clause of the Fourteenth Amendment. International Shoe Co. v. Washington, Office of Unemployment Comp. and Placement, 326 U.S. 310 (1945) (requiring "minimum contacts" sufficient to ensure that "maintenance of the suit does not offend traditional notions of fair play and substantial justice"); Mutual Serv., 358 F.3d at 1319; Cable/Home, 902 F.2d at 855.

The Georgia long-arm statute provides that a court may assert personal jurisdiction over a nonresident defendant as follows:

> A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state . . .; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; [or] (4) Owns, uses, or possesses any real property situated within this state.

O.C.G.A. § 9-10-91. The Georgia Supreme Court has held that paragraph (1) extends "to the maximum extent permitted by procedural due process." Innovative Clinical & Consulting Services, LLC v. First Nat. Bank of Ames, 279 Ga. 672, 675 (2005). As to sections (2) and (3), the following three part test must be satisfied: (1) "the nonresident has purposefully done some act or consummated some transaction with

or in the forum"; (2) the Georgia plaintiff has a legal cause of action in tort against the nonresident that arises out of or results from the purposeful activity of the defendant involving this state; and (3) "if the requirements of (1) and (2) are satisfied, the exercise of jurisdiction over the nonresident must be 'reasonable.'" Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 849 (11th Cir. 1988). The Plaintiff contends that this case meets each of these requirements because the Defendants purposefully transmitted millions of unsolicited text messages through the Plaintiff's computers in violation of state and federal law. If the Defendants were responsible for the spam attack, the exercise of personal jurisdiction by a federal court in Georgia would be reasonable.

The Defendants argue, however, that the Plaintiff has brought this lawsuit against the wrong parties and that they were not responsible for sending the unsolicited text messages. Charles Rossop has filed a declaration swearing that C&C Global is a corporation engaged only as an "aggregator" in the "timeshare lead business." (Rossop Decl., ¶ 12.) A lead is the personal contact information of an individual who has indicated that he may be interested in receiving services or information in a particular area–in this case the selling or renting of timeshares. As a timeshare lead aggregator, C&C Global allegedly purchases lead information from third parties generally referred to as vendors or affiliates. (Id., ¶ 14.) The Defendants

contend that they never knowingly purchased or accepted leads from vendors that had been procured through illegal spamming practices. Rossop declares that in November 2006, C&C Global received a test lead file from an individual seeking to become a paid lead supplier for the company. According to Rossop, nothing about this file indicated that the leads it contained "had been generated via any illegal or 'spamming' means, such as those alleged in the Complaint." (Id., ¶ 18.) Independent contractors hired by C&C Global subsequently contacted some of the individuals identified in these leads and reported back to C&C Global that some of these contacts had complained of receiving unsolicited spam text messages. C&C Global then did not pay or request any additional leads from this vendor. (Id., ¶ 19.)

The Court finds that the Defendants' declarations support their contention that they are not subject to personal jurisdiction in this district. The burden thus shifts back to the Plaintiff to prove "by affidavit the basis upon which jurisdiction may be obtained." Hudson Global Res. Mgmt., Inc. v. Beck, 2006 WL 1722352, at *3 (M.D. Fla. June 20, 2006) (citing Cable/Home Commc'n Corp., 902 F.2d at 855). AT&T must provide enough evidence to withstand a motion for a directed verdict and cannot rely merely on the Complaint's factual allegations. Id.[2] In the Eleventh Circuit, a

---

[2] The Plaintiff argues, however, that the Court must "accept as true all material allegations in the complaint, and must construe the complaint in favor of the plaintiff." (Pl.'s Resp. to Mot. to Dis., at 14.) As demonstrated by the above discussion, this

party meets this directed verdict standard by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ." Walker v. NationsBank of Florida, 53 F.3d 1548, 1554 (11th Cir. 1995).

Here, the Plaintiff's evidence does not meet this standard. Its first exhibit provides the domain information for each of the websites the Plaintiff claims are owned by the Defendants. (Pl.'s Resp. to Mot. to Dis., Ex. A.) The Plaintiff argues in its opposition memorandum that the spam attack websites are "strikingly similar to the websites run by Defendants, which are all designed to capture data." (Id., at 5.) The Court cannot base the exercise of jurisdiction on mere speculation that similarity of the websites shows common ownership. Because the Defendants have provided a sworn statement declaring that they did not own or operate the spam attack website, the Plaintiff's first exhibit would not provide a legally sufficient evidentiary basis to find in their favor on this issue. See Fed. R. Civ. P. 50(a).

The Plaintiff's second exhibit does not implicate the Defendants in any way. It provides only the Plaintiff's counsel's testimony that she contacted the Internet Service Provider and Internet security company associated with

---

pleading standard for a motion to dismiss under Rule 12(b)(6) does not apply to a motion to dismiss for lack of personal jurisdiction.

www.webuyresorts.com and www.resortsellers.com, and could locate no customer information relating to the owner names on these websites. (Hall Decl., ¶¶ 5-9.) The Plaintiff thus concluded that these were fictitious identities. (Id., ¶ 10.) This declaration in no way contradicts Rossop's statements that the Defendants did not own or operate this website.

The Plaintiff's third exhibit, finally, also fails to create a prima facie case. In it, AT&T employee Bobotek recounts his attempt to determine the identify of the individual or individuals who sent these spam texts. He states that he visited www.resortsellers.com, one of the websites advertised in the spam text messages, and later received a response from an individual identifying herself as "Val" with "CNC Timeshares in Daytona Beach, Florida." (Bobotek Decl., ¶ 10.) This statement fails to contradict the Defendants' testimony that they did not knowingly send unsolicited text messages, nor knowingly induce any third party to send such a text message. The Defendants contend that they received an unsolicited test lead file during the first week of November 2006 and, upon discovering that these leads had been procured through spam text messages, declined to pay the individual who provided this information or request any additional leads. (Rossop Decl., ¶ 18.) Bobotek's declaration does nothing to refute this sworn statement. The Court thus finds that the Plaintiff has failed to produce an affidavit creating a conflict with Rossop's

declaration. Accordingly, the minimum contacts necessary to exercise jurisdiction over the Defendants have not been shown, and jurisdiction under Georgia's long-arm statute has not been demonstrated. The Defendants may be sued in Florida.[3]

### III. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 13] is GRANTED. This action is DISMISSED without prejudice.

SO ORDERED, this 3 day of July, 2007.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[3] The Plaintiff further contends that the Defendants are subject to strict liability pursuant to the TCPA, 47 U.S.C. § 227 *et seq.*, because they used an "auto dialer" to send these text messages. See id. § 227(b)(3). As discussed above, however, the Defendants have stated that they did not send these text messages or knowingly induce anyone else to send them. Thus, even assuming arguendo that the TCPA does not require proof of intent, the Plaintiff has not presented any evidence to counter the Defendants' statements that they did not use an auto dialer.